Donahue,' J.
Our attention is directed to the fact that since the rendition of the judgment of the circuit court, which is sought to be reversed by this proceeding in error, certain important changes have been made in the constitution and statutory laws of our state, and that these changes directly affect the questions here presented. It would seem unnecessary to say that this court cannot consider these amendments, except, perhaps, in so far as they might aid in the construction of the law as it existed at the time of the adoption of this resolution providing for an issue of bonds.
The authority of this board of education to issue these bonds must be determined solely with reference to the law as it then existed and without reference to what the law had been in the past or *407 might be in the future. The board of education was neither required nor permitted to anticipate any change in the law.
The resolution adopted by the board of education of the Canton city school district, providing for the issue of bonds in the sum of $110,000, purports to issue the same under the authority conferred upon it by Section 7629, General Code. This section provides that the board of education may issue bonds in anticipation of income from taxes, levied or to be levied, from time to time, as occasion requires, in an amount not greater than would equal an aggregate of a tax at the rate of two mills for the year next preceding such issue. Section 7630, General Code, further limits the issue of bonds to an amount that can be provided for and paid with the tax levies authorized by Sections 7591 and 7592, General Code. Section 7591 authorizes a levy for all school purposes not to exceed twelve mills on the. dollar of the tax valuation. Section 7592 authorizes an additional levy of five mills for any number of consecutive years not exceeding five, in addition to this twelve-mill levy, when such additional levy is approved by a majority of the votes of the electors of the school district.
These sections were the law of Ohio when the g'eneral assembly passed Sections 5649-2 to 5649-6, General Code. These sections limit the rate of taxes that may be levied within any taxing district for all purposes to ten mills on the dollar of the tax valuation of the taxable property of any county, township, city, village, school district or other taxing district for that year, and such levies in addition thereto for sinking fund and *408 interest purposes as may be necessary to provide for any indebtedness heretofore incurred or any indebtedness that may hereafter be incurred by a vote of the people. These sections, as they read at the time of the adoption of this resolution to issue bonds, also contain the further limitation that the total amount of taxes levied in the year 1911 or any year thereafter, for all purposes, shall not exceed in the aggregate, the total amount of taxes levied in the year 1910, plus six per cent, thereof for the year 1912, nine per cent, for the year 1913 and twelve per cent, thereof for any years thereafter, or, such less amount as may be produced by the levy of a maximum rate of ten mills on each dollar of the tax valuation of the taxable property in any county, township, city, village, school district or taxing" district, for that year, whether such taxes be levied- for the same or other purposes, except levies made for interest and sinking fund purposes. •
The legislature when it passed these sections of the General Code limiting the rate of taxes that might be levied in any one taxing district, did not specifically repeal Sections 7591 and 7592, General Code, but the effect of this later legislation upon these former statutes cannot be doubted. It is conceded in the brief of one of counsel for the board of education that this limitation is in direct conflict with the limitations provided in these former sections, and- that they are, therefore, repealed by implication. No other conclusion is possible. Sections 5649-2 et seq., at the time this resolution to issue bonds was adopted, in plain and unambiguous language peremptorily limited *409 the rate of taxes that could be levied upon the tax valuation in any one taxing district for all state, county, city, village and school purposes combined, to ten mills on the dollar, excepting therefrom levies for sinking fund and interest purposes necessary to provide for any indebtedness theretofore .incurred or any indebtedness that might thereafter be incurred by a vote of the people, and excepting also from this limitation levies for emergencies mentioned in Sections '4450, 4451, 5629 and 7419, General Code, and further provided that an increased rate might be levied in such an amount that the aggregate levy would not exceed fifteen mills on the dollar in any taxing district, exclusive of the exceptions herein-before set forth, provided the proposition to levy such increased rate Avas submitted to the electors of the taxing district and a majority vote cast in favor thereof.
It is the duty of a court to harmonize and reconcile laws where possible. It is also the settled law of this state that an act of the legislature that fails to repeal in terms existing statutes on the same subject-matter must be held to repeal the same by implication if the later law is in direct conflict therewith. Goff et al., v. Gates et al., 87 Ohio St., 142.
The provisions of Sections 5649-2 et seq., in reference to the rate that may be levied in any taxing district, are so clearly in conflict with the provisions of Sections 7591 and 7592, General Code, that these sections are necessarily repealed by implication. That being true, Section 7630, General Code, must fall Avith them, for that section *410 provides only for the application of the limitation in these repealed sections to the issue of bonds under Section 7629, General Code. It is suggested in the brief of counsel for defendant in error that Section 7630, General Code, is not necessarily repealed, but that, on the contrary, the provisions of this later legislation, limiting the rate of taxes that may be levied in any taxing district, should be read into this section, instead of the specific sections named, to-wit, Sections 7591 and 7592, General Code. In answer to this it- is only necessary to suggest that a law cannot be amended in this way. If Sections 7591 and 7592, General Code, are no longer the law of Ohio, it necessarily follows that Section 7630, General Code, furnishes no rule for determining the rate of taxes levied or to be levied which may be anticipated by an issue of bonds under the provisions of Section 7629, General Code.
Our attention is called to the fact that the general assembly of Ohio passed an act amending' Sections 5649-3u, 5649-3&, 5649-3c, 5649-3d, 5649-3<? and Sections 5649-5a, S649-5&, General Code, relating to the maximum tax rate which may be levied in any one taxing district, on the same day it passed an act amending Sections 7620 and 7625, General Code; that the former act was approved June 2, 1911, and the latter act was approved June 7, 1911; that in the act amending Section 7625, Sections 7629 and 7630 are referred to, and that, therefore, if there is to be a repeal by implication, this act amending Sections 7620 and 7625, being the later act, Sections 5649-2 et seq., General Code, are the sections that are repealed by implication.
*411 Section 5649-2 was passed May 10, 1910, and its provisions being in conflict with Sections 7591 and 7592, these statutes were necessarily repealed by implication.
Section 16 of Article II of the Constitution of Ohio provides that no law shall be revived or amended unless the act contains the entire act revived, or the section or sections amended, and the section or sections so amended shall be repealed. It therefore follows that if these statutes were repealed by implication by the passage of Sections 5649-2 et seq., General Code, and of this there can be no doubt, then they could not be revived, reenacted or amended by any method in direct conflict with the positive prohibition of the constitution. Sections 7591 and 7592, General Code, were not even referred to in the act amending Section 7625, General Code; but it is claimed that as that act refers to Section 7630, General Code, and Section 7630 in turn refers to Sections 7591 and 7592, General Code, it clearly indicates that the legislature of Ohio did not consider these sections repealed. The fact remains, however, that these sections were repealed by implication regardless of whether the general assembly recognized that fact or not.
It is claimed on behalf of the plaintiffs in error that the board of education has no authority to issue bonds under the provisions of Section 7629, without first submitting the question of issuing such bonds to a vote of the electors.
The history of this legislation is of very great importance in the consideration of this question. The first school code of Ohio was passed by the *412 legislature on May 1, 1873. Section 1 of this code divided school districts into city districts of the first class, city school districts of thé second class, village districts, special districts and township districts, and this distinction was carefully observed in all the sections of the code. Section 61 of that code was the original of .Section 7625, General Code, and specifically applied to the board of education of any school district, except a city' school district of the first class. Section 56 of this code, a part of which is the original of Section 7629, General Code, provided that any board of education of any city district of the first class might issue bonds in anticipation of income from taxes levied or to be levied.
On the 25th day of April, 1904, the legislature of Ohio adopted a new code of laws for the government of the common schools of the state of Ohio. In this code, adopted in 1904, the distinction between the boards of education of the different school districts is eliminated. Section 3991, Revised Statutes, now Section 7625, General Code, reads: “When the board of education of any school district determines,” etc., while the original act read: “Whenever the board of education of any school district, except city districts of the first class, shall determine,” etc. Section 3994, Revised Statutes, now Section 7629, General Code, reads: “The board of education of any school district may issue bonds.” The original act read: “Any board of education of any city school district of the first class.”
It is insisted that these two sections as amended apply to every board of education of any school *413 district in Ohio, and can now serve no separate or several purpose if a vote of the electors is necessary to authorize the issue of bonds under both sections; and that it clearly appears that the limitation in Section 7629, General Code, to the amount of bonds equal to the aggregate of a two-mill levy on the duplicate of the preceding year payable from taxes levied under the provisions of Sections ,7591 and 7592, General Code, means that to this extent the board of education has authority to issue bonds without submitting the question to a vote, but when bonds are to be issued in excess of this amount, and to be paid by a levy additional to the levies authorized by Sections 7591 and 7592, General Code, then a vote is required.
In view of the change in the wording of these sections from their original form in the school code of 1873, making the provisions of each section applicable to all boards of education of any school district in Ohio, it would appear that this is the only possible purpose in retaining both Sections 7625 and 7629, General Code. Unless this distinction does obtain the retention of these separate sections, applicable as amended to any and all boards of education, could serve no separate purpose whatever. The contention that the provisions in Section 7629, General Code, stipulating that the bonds issued under that statute must be issued subject to the restriction specified in Sections 7626 and 7627, General Code, which require that the issue of such bonds shall be submitted to the electors, because by the provisions of Section 7626, General Code, it is provided that “If a majority *414 of the electors, voting on a proposition to issue bonds, vote in favor thereof, the board thereby shall be authorized to issue bonds for the amount indicated by the vote,” cannot be sustained-in view of the provisions of Section 7628, General Code. This section authorizes a tax levy in addition to the maximum levy authorized by Sections 7591 and 7592, General Code, for the purpose of providing for the payment of principal (and interest of the bonds issued under the authority of the next three preceding sections when the proposition to issue such bonds has been approved by a majority vote of the electors, while Section 7630, General Code, provides that the tax that may be levied for the payment of principal and interest of bonds issued under Section 7629, General Code, shall not exceed the levy authorized by Sections 7591 and 7592, General Code; so that if in both cases the question of the issue of bonds is to be submitted to- the electors, there would be no reason whatever for the separate provisions of Sections 7628 and 7630, General Code.
Conceding then the authority of the board of education to issue bonds under the provisions of this section, without first submitting the question of their issue to a vote of the electors of the school district, how stands this case? This school code of 1873 and its successor of 1904 were designed to cover the whole subject-matter. The sections therein were related to each other and mutually interdependent one upon the other. The provisions of Section 7629, General Code, were modified, aided and restricted by the provisions of Sections 7626, 7627, 7630, 7591 and 7592, General *415 Code. These material parts of this code being no longer in force or effect, the whole plan and scheme is weakened and possibly destroyed.
If Section 7629, General Code, has survived the wreck of the plan provided by the school code of 1904, for the issuing of bonds by the board of education, it is not only bereft of its fellow sections of that code in reference to the same subject-matter, but it is deprived of the aid of their correlative provisions with reference not only to the issuing but to the retirement of bonds.
Section 7629, General Code, provides for the issue of bonds only in anticipation of income from taxes levied for the purposes named in that section. It is apparent from this provision that under no circumstances can bonds be issued under authority of this section in excess of the income to be anticipated arising from the levy of a tax, for the purposes named, within the limitations of law. This section contains a further provision—that the bonds issued thereunder shall not exceed an amount equal to the aggregate of a tax at the rate of two mills on the tax valuation for the year next preceding such issue. Section 7689, General Code, provides that the school year shall begin on the first day of September of each year and close on the 31st day of August of the succeeding year. This period is recognized as the fiscal year. These bonds were proposed to be issued in the fiscal year 1912. The evidence is uncontradicted that the total tax valuation for the fiscal year 1911 was $19,893,240. A levy of two mills upon the total tax duplicate would produce less than $40,000.
This section (7629) provides that “The board of education of any school district may issue bonds *416 to obtain or improve public school property, and in anticipation of income from' taxes, for such purposes, levied or to be levied, from time to time, as occasion requires, may issue and sell bonds.”
This, of course, means that the income that may be ■ anticipated by the issue of bonds under the provisions of Section 7629, General Code, is the income arising from taxes, levied or to be levied, for the purposes named in the statute, and not to anticipate levies made for current expenses or any other purpose except the purposes specified.
■Counsel for defendant in error not only concede this proposition, but also recognize the necessity of providing first a levy for a fund sufficient to meet the current expenses of the elementary schools in that district already established, before a levy should be made for the purpose of purchasing a site for another high school. In the calculations submitted to this court, the necessary levy to meet these current expenses is deducted from the amount of the total levy the board of education is authorized to make for all purposes, and after this is done then the controversy arises as to whether the board of education, under the limitation of Section 5649-2 et seq., can levy a specific tax in a sum sufficient to pay the interest and provide a sinking fund for the retirement of bonds in the sum of $110,000 for the purpose of obtaining a high school site.
Counsel for defendants in error base their calculation on the calendar year, bút their calculation of current expenses is for the fiscal year; so that one or the other must be rejected. If the calendar year is to be taken, then there is no evidence in this *417 record upon which to base a calculation of the current expenses for the maintenance of the schools. Mr. Lane, who was the clerk and treasurer of the board of education, testifies as follows (page 57 of the record) :
“Q. Your fiscal year begins September 1 and ends August 31 of each year? A. Yes, sir.
“Q. The difference between your receipts and expenses is $3,243.64? A. Yes, sir; about that.”
Mr. Lane is in position to know the exact financial condition of this board of education at the end of the fiscal year, and there is nothing in this record that refutes this positive evidence upon this important question. It is clear that this balance would not be sufficient to provide a sinking fund for the payment of principal and interest on the amount of bonds proposed to be issued.
Even if this amount were sufficient, it appears that the evidence of Mr. Lane is predicated upon a levy of four and one-tenth mills, and there is no certainty that this board of education can levy that amount in the future. In this case there was no vote of the electors authorizing an increased levy, so that as the law then provided the total levy for all purposes in this taxing district, exclusive of a levy for sinking fund and interest purposes, to provide for any indebtedness theretofore incurred or any indebtedness that may hereafter be incurred by a vote of the people, could not exceed ten mills on the dollar 'of the tax valuation. The taxing authorities are authorized to certify to the budget commissioners levies aggregating fifteen mills on the dollar of the tax valuation, and in case that is done it is the positive duty of the *418 budget commissioners to reduce that amount to ten mills on the dollar. The only reasonable basis on which to estimate the amount of income that may be anticipated by an issue of bonds is the proportion of the maximum levy the taxing authority proposing to issue the bonds may certify to the budget commissioners to the total maximum levies that may be certified by all the taxing authorities in that district. The total maximum rate that can be certified by a board of education to the budget commissioners is five mills, which is just one-third of the total maximum that can be certified to the budget commissioners by all the taxing authorities in any taxing district. This court has held in the case of The State, ex rel. City of Toledo, v. Sanzenbacher, 84 Ohio St., 506-507, that the budget commissioners are not required to reduce the levies certified to them in proportion to the amount that each taxing authority •is authorized to levy, but that in making such reduction they should give due regard to this proportion. Therefore, a rate determined in accordance with this proportion is not a fixed and certain rate that may be levied by the board of education in any and all events, yet it does furnish a reasonable basis and the only reasonable basis upon which a bond issue can be predicated.
If all the taxing authorities within any one taxing district were to issue bonds in anticipation of taxes to be levied at the maximum rate that they are authorized to certify to the budget commissioners, without reference to the fact that it is the <luty of the budget commissioners to reduce the total- amount of the tax levy certified to them to ten mills on the dollar of the tax valuation, it *419 would follow that bonds would be issued..largely in excess of the income to be anticipated from taxes levied or to be levied, for it is not possible that all of these taxing authorities may levy the maximum rate they are authorized to certify to the budget commissioners. Some years, by reason of the forbearance of some taxing authorities to levy their total maximum rate, the other taxing authorities may levy more than' their proportionate share thereof, and some years, because of the urgent necessity and the equities of the situation, the budget commissioners may not strictly observe this proportion in' reducing the levies certified to them to a total of ten mills on the dollar, and may permit a levy in excess of this proportion. Other years, for the same reasons, it may reduce the levy of any one taxing authority below this proportion. The fact that it may levy more this year than its proportionate share will not justify the assumption that it may continue to levy such rate, or any rate in excess thereof, for the number of years such bonds may run. On the contrary, the most that reasonably can be anticipated is that the annual rate it may be permitted to levy, one year with another, during the time such bonds may run, will average its fair proportion of the total tax rate that may be levied in that taxing' district. Any rate above that proportion depends upon too many conditions and uncertainties, while on the other hand it is highly improbable that the average levy for the years these bonds are to run will fall below this proportion. It is apparent from the evidence in this case that a levy of three and one-third mills will not meet the current expenses of this school *420 .district, much less provide for the payment of these bonds and interest at maturity. Upon this proposition there is no conflict of evidence.
It is said that in this calculation the future financial condition of the school district need not be taken into consideration, for the increase in the tax duplicate will certainly equal the increase in the expenditures for school purposes made necessary by the increase in population.
Section 7644, General Code, requires that each board of education shall establish a sufficient number of elementary schools to provide for the free education of the youth of school age within the district, and that these elementary schools must be continued at least thirty-two weeks in each school year.
Section 7663, General Code, provides that the board of education may establish one or more high schools, whenever it deems the establishment of such school or schools proper or nécessary for the convenience of the pupils attending them, or for the conduct and welfare of the educational interests of the district.
These bonds are proposed to be issued for the purpose of purchasing a high-school site, but under the mandatory provisions of Section 7644, General Code, it is the duty of the board of education to provide for the establishment of a sufficient number of elementary schools and to continue such schools for at least eight months in the school year, and where a high school has already been established it is certainly the duty of the board of education to provide for the continuing of that school before establishing another one, so *421 that in estimating the amount of bonds that should be issued for this purpose the future imperative needs of the schools of this district must be taken into account.
The enormous increase of the tax duplicate in the fiscal year 1912 over the fiscal year 1911 is not likely to occur again, at least not in the near future, and yet if it had not been for this phenomenal increase within that time, this board of education would not now have sufficient funds to meet its current expenses. There is now a large bonded indebtedness that must be paid within the next eighteen years, and to that amount must be added the enormous amount of interest that will accrue on these bonds. The record (page 135) shows that it will require $318,068.06 to retire the bonds coming due within the next nine years. The levy to provide for the retirement of these bonds now comes within the limitations of Section 5Ó49-5&, as amended February 27, 1913. Counsel for the board of education in the opening pages of their brief inform us that for many' years a new high-school building has been considered necessary in this district, and of late years the need became so pressing, due to the crowded condition of the schools, that the board of education decided to acquire a site for a large modern high-school building". This statement shows the increasing demands upon the funds of this school district. The very purpose for which these bonds are to be 'issued necessarily requires a large increase in the current expenses. It is hardly reasonable to .suppose that the tax duplicate will increase with such rapidity as to permit the purchase of this site, *422 the erection of such a building as may be required and . the maintenance thereof. It would seem to be. not only proper but necessary to take into account the future demands upon the school funds for school purposes. in connection with the probable increase of the tax duplicate in determining just what income may be anticipated by the issue of bonds for the purchase of school property without detriment, to the future imperative needs of the schools of that school district. This, of course, is a question for the determination of the board .of education in the first instance, and a court of equity would not for this reason interfere to restrain the issue of these bonds, except for an abuse of discretion, and if the judgment of the board of education is' acquiesced in by the taxpayers of that school district and the bonds have been issued in good' faith, it would then be too late to challenge its decision in this particular.
At this time, under the amendment to the Constitution (Section 11, Article XII) which provides that no bonded indebtedness of the state or any political subdivision 'thereof shall be incurred or renewed, unless in the legislation under which such indebtedness is incurred or renewed provision is made-for levying and collecting annually by taxation an amount sufficient to pay the interest on said bonds and provide for a sinking fund for their final redemption at maturity, it is of the utmost importance that at the time of the incurring of such indebtedness the other needs of the political subdivision proposing to issue the bonds should be taken into account, for this levy must continue during the term of the bonds in an amount suffi *423 cient to pay the interest and provide a sinking fund for their final redemption, even though the amount should exhaust the entire income available from taxation and without regard to thé current expenses. ' In other words, under this provision of the constitution, the payment of interest and the retirement of bonds are to be provided for first, and the current expenses become a secondary consideration. This amendment, however, has no application to this case.
At best the situation presented by this record is an unfortunate one, but the law of this state, as it existed at the time this resolution was adopted, must be applied to the case at hand. The court recognizes the difficulties with which this board of education must contend in order to furnish the beneficence of education to the youth of that school ■district, but the court is no more the master of the situation than is the board of education itself. It can, only interpret and apply the law given it by the legislature to the questions here presented. Some method of relief must be arrived at other than one not only in violation but in defiance of law. This is a matter that demands the early attention of the lawmaking power of this state.
That part of the judgment of the circuit court refusing an injunction, restraining the board of education from issuing these bonds, is reversed for the reasons above stated, and an injunction will be allowed as prayed for in the petition.

Judgment modified and judgment for plaintiffs in error.

• Nichols, C. J., Shauck, Johnson, Wanamaker, Newman and Wilkin, JJ., concur.